Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 888
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for the Christensens

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

| | |
|---|---|
| In re<br><br>FRANK EDWARD LEMBI<br><br>Debtor | Case No. 11-33792-HLB<br><br>Chapter 7 |
| E. LYNN SCHOENMANN,<br>    Plaintiff<br><br>vs.<br><br>SWIPE USA, LLC; MOLLY MCCLARRINON aka MOLLY CHRISTENSEN; RONALD CHRISTENSEN; LISA E. LEMBI-SAYED; and the ESTATE OF WALTER R. LEMBI,<br>    Defendants | Adv. Pro. No. 15-3073 |

**MOTION TO VACATE DEFAULT JUDGMENT**

TO:    THE HONORABLE HANNAH L. BLUMENSTIEL
         UNITED STATES BANKRUPTCY JUDGE

The Motion of Ronald Christensen and Molly McClarinon (collectively, the "Christensens") to vacate the Default Judgment entered against them herein; Dkt #52; so as to enable them to defend this Adversary Proceeding on the merits, respectfully represents as follows:

*The Trustee Effects Ineffective Service*

1. The Trustee sought and obtained entry of a default judgment against the Christensens based on service which was transparently improper. For service on an individual, the complaint and summons must be mailed "to the individual's dwelling house or usual place of abode." Fed. R. Bankr. P. 7004(b)(1).

2. The Trustee purported to serve the Christensens at 1410 Lesnick Lane, Suite 1, Walnut Creek, California (the "Lesnick Property"). Neither of the Christensens have ever resided at the Lesnick Property. Attached hereto is a Google Maps picture of the Lesnick Property, demonstrating that it could never have been the Christensens' "dwelling house or usual place of abode."

3. It is also permissible to serve process on an individual at the place where the individual "regularly conducts a business or profession." Fed. R. Bankr. P. 7004(b)(1)

   a. Molly Christensen never conducted any business at the Lesnick Property.

   b. Ronald Christensen was previously associated with a business, Aspen Grove Capital Group, which operated at the Lesnick Property, but his involvement in the business was no more than part-time and the Lesnick Property was never his primary place of business.

4. Moreover, the Trustee could have effected valid service had she wanted to do so.

   a. The Trustee purportedly relied on Swipe USA, LLC ("Swipe") tax returns in her possession for the merits of the lawsuit, but the Christensens are informed and believe that the K-1s associated with those returns would have reflected the Christensens' actual "dwelling place."

   b. Likewise, the Trustee was possessed of the books and records of the Debtor and many of the books and records of Swipe, all of which would have reflected either the Christensen's actual dwelling place or addresses at which they were likely to receive mail.

   c. Moreover, the Trustee's counsel spoke with Ms. Christensen by telephone in November and December of 2015, within weeks *after* seeking entry of her default. See, Dkt #12.

He could have asked if she had received the Complaint or inquire about why she failed timely to respond to it, but instead he limited his conversation to her asking for documents (which she was unable to provide). Dkt #46-2, ¶ 5.

5. The Christensens never received service of the Complaint, the summons or any other pleadings.

6. The Christensens first became aware of the existence of the Adversary Proceeding and the default judgment approximately two weeks ago. This Motion necessarily followed.

*The Complaint is Meritless*

7. Ronald Christensen established the Swipe business in the late 1990s. Swipe installed, managed and operated ATM machines at various locations. The business was initially successful, growing to an installed base of hundreds of ATMs owned or under management.

8. Frank Lembi, the Debtor, offered to provide funds to advance Swipe's business in return for an equity stake. Ultimately, Frank Lembi and his daughter, Lisa Lembi-Sayed, obtained minority equity stakes in Swipe. While Lisa Lembi-Sayed had limited involvement in the business, her husband Gary Sayed and the Debtor were actively involved in all material decisions about the company.

9. Commencing with the onset of the Great Recession in 2006, Swipe's business began to contract and become unprofitable. By 2008, Swipe was selling assets – based on a consensus decision of the members – to try to meet operating costs. That process continued over the ensuing years.

10. As the Great Recession deepened, Swipe lost significant historical accounts. Big Al's on Broadway in San Francisco had been one of Swipe's most profitable locations, but it closed suddenly without notice. Other accounts were lost due to increased competition, which led customers to move whole ATM portfolios to other management companies to obtain cheaper pricing. Some customers sold their

routes entirely. Pressure in the industry reduced management fees from $0.55 per transaction to less than $0.15 per transaction.

11. By 2010, Swipe had a negative equity of more than $1 million and was losing money at a significant rate. As Swipe's income deteriorated, it became unable to add additional ATM sites (due to lack of funds to purchase machines, pay commissions, hire staff), faced increasing industry costs, and lost ATM locations. Swipe was required to sell assets to attempt to meet expenses and pay debts.

12. In 2010, Federal ADA laws went into effect requiring costly equipment upgrades, such as an ADA pin pad and braille stickers, new network signage and stickers, and another upgrade for hearing impaired. Each round of upgrades cost a minimum of $300 per ATM and often required the purchase a new ATM altogether at a cost of up to $5,000. Swipe did not have funds to perform these mandatory upgrades. Relatedly, ADA lawsuits began to be filed nationwide against ATM companies for various violations of the ADA code. Swipe was required to defend some of these suits, which further strained its cash flow. In addition, the City of San Francisco began an enforcement campaign against what it asserted had been illegally installed ATMs.

13. Although Swipe struggled to survive through this period, it was unsuccessful. As a result of the Debtor's financial circumstances, he could not provide a source of funding, so the only available funding sources were asset sales and attempts to further reduce operating expenses. The business contracted rapidly but did not achieve profitability. The Trustee recites that Swipe's revenues contracted from $5,866,710 in 2010 to $2,709,972 in 2011 to $62,000 in 2012. Dkt #46-5, 8-10.

14. The Trustee asserts that the Debtor filed bankruptcy in October of 2011. The Christensens did not learn of the bankruptcy filing until years later.

15. The Trustee asserts that the Crhistensens liquidated Swipe after the bankruptcy filing and recovered and retained substantial funds from the liquidated proceeds. There is no factual basis for the Trustee's assertions.

16. In fact, by October of 2011, substantially all of Swipe's assets had already been liquidated, with the liquidated proceeds dedicated to sustaining operations and paying debts.

17. Swipe was the Christensen' principal source of income, and its inability to pay their salary directly led to the foreclosure of their home in Walnut Creek in 2013. Swipe had relocated its operations to a property jointly owned by the Debtor and the Christensens on 6045 Claremont Avenue in Oakland, but that property was foreclosed in approximately 2012. Far from representing a source of funds, the failure of Swipe resulted in financial devastation to the Christensens.

*The Default Judgment Must Be Vacated*

18. Rule 60 authorizes the Court to grant relief from previously entered judgments. Specifically, Rule 60(b) provides, in relevant part,

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; [or]
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. A motion under Rule 60(b)(1) must be filed and served within a year after the entry of the judgment; there is no deadline for a motion under Rule 60(b)(6). The Default Judgment was entered on May 9, 2017; Dkt #52; so this Motion is timely under any circumstances.

19. The applicable legal test in the Ninth Circuit is clear:

> The discretion of the court is limited by three policy considerations. First, because of the remedial nature of Rule 60(b), it must be liberally applied. Second, because default judgments are disfavored, cases should be decided on their merits if possible. Thirdly, so long as relief is timely sought, and there is a meritorious defense, any doubt should be

MOTION TO VACATE DEFAULT JUDGMENT Page 5

resolved in favor of setting aside a default judgment. *Wilson v. Moore and Assocs., Inc.,* 564 F.2d 366, 368 (9th Cir. 1977).

*Civic Ctr. Square v. Ford (In re Roxford Foods)*, 12 F.3d 875, 879 (9th Cir. 1993)

20. Here, the Trustee apparently elected ineffectively to serve the Christensens in order to obtain their default. (She agreed to dismiss the only defendant she properly served, who was prepared to oppose the Adversary Proceeding on its merits.) There is every reason to decide this lawsuit on the merits, and there is every reason to think that the Christensen have a meritorious defense.

21. Finally, the Christensens pursued relief timely after learning of the suit, and no harm will be suffered by the Trustee by requiring her to litigate it on the merits.

WHEREFORE, the Christensens pray that the Court vacate its Default Judgment herein and permit them to present their defenses on the merits and grant such other and further relief as may be just and proper.

Respectfully submitted

DATED: May 8, 2018    ST. JAMES LAW, P.C.

By: /s/ Michael *St James* .
    Michael St. James
    Counsel for the Christensens

MOTION TO VACATE DEFAULT JUDGMENT    Page 6

Case: 15-03073    Doc# 56    Filed: 05/08/18    Entered: 05/08/18 06:16:47    Page 6 of 7

Google Maps    1410 Lesnick Ln



Image capture: May 2017    © 2018 Google

Walnut Creek, California

Google, Inc.

Street View - May 2017

Case: 15-03073    Doc# 56    Filed: 05/08/18    Entered: 05/08/18 06:16:47    Page 7 of 7